Monroe Special Term, September, 1847.
*Welles*, Justice.

Frost *vs.* Myrick.

Where an injunction has been allowed by an officer competent to act in either of two characters, and where it does not appear clearly in which character he did act, it will be presumed he acted in the higher office of judge of the court, instead of that of injunction master.

A court of equity has jurisdiction to restrain a party, by injunction, from proceeding against the person, and the equitable interests, of his debtor, under the third and subsequent sections of the act to abolish imprisonment for debt and to punish fraudulent debtors, in cases proper for the interference of such court.

That statute, as regards its provisions for compulsory process against debtors by contract, is a mere civil remedy.

Where a court of equity has acquired jurisdiction of a suit for one purpose, it may retain it for all purposes, which are necessary, in order to afford complete relief.

A decree cannot be impeached, after enrolment, except by a bill of review, or a bill in the nature of a bill of review, charging fraud.

Where the assignee of a decree in a foreclosure suit is unconscientiously enforcing the same, against the mortgagor, for the deficiency, in violation of an agreement made by the assignor not to do so, a court of equity has power to interfere, for the protection of the mortgagor. And the mortgagor is not bound to wait until the deficiency is wrung from him, by execution upon the decree, or by proceedings under the Stilwell act, before he can ask for that protection.

In Equity. Motion to set aside, or dissolve, injunction. The bill stated that the plaintiff gave his bond and mortgage on 84 acres of land in Niagara county, to one William Swain, of Auburn, Cayuga county, bearing date May 28th, 1841, to secure the payment of $1200 on demand. That on the 19th of September, 1840, the plaintiff sold and assigned to Swain two bonds and mortgages, one given by Aaron Stephens to the

Frost *v.* Myrick.

plaintiff, dated June 8, 1840, to secure $1300, on certain lands in Monroe county ; the other given by Josiah Wilcox to the plaintiff, dated November 7, 1839, on lands in Niagara county, to secure $3000. That the consideration of the assignment of Stephens' bond and mortgage was $1165, 25, and of Wilcox's, $2881,47 ; and that at the time of the assignment, the plaintiff, by an instrument in writing, guarantied the payment of the bonds and mortgages against Stephens and Wilcox. That on or about the 2d of October, 1842, the several bonds and mortgages having become due, Swain applied to the plaintiff for payment. That the plaintiff had become involved in debt, and so informed Swain, and at the same time told him that it would be difficult for Stephens and Wilcox to pay, and proposed that Swain should take the premises embraced in the several mortgages, in payment and satisfaction of the amount due to him ; to which Swain at once agreed, provided, upon examination, he should find the lands to be worth the amount due on the bonds and mortgages. That in April, 1843, and before the sale first hereafter mentioned, Swain, with his son and the plaintiff, examined the mortgaged premises, and expressed his opinion that the several mortgaged premises were worth more than the moneys due, and at the same time agreed with the plaintiff, in consideration that the plaintiff promised to aid him in obtaining foreclosures of the mortgages and the title to the real estate, (the mortgaged premises,) without unnecessary delay, and at the least expense, that he would foreclose the mortgages, and either bid off each parcel for the amount of the incumbrance upon it, or if the lands were purchased at a less sum, the plaintiff should be released and discharged from all claims on account of any deficiency arising upon the sales. That the plaintiff, relying upon this agreement, aided Swain in various ways in obtaining foreclosures of the mortgages without delay and at the least expense, and forebore to make any effort to procure bidders, and did not attend the sales, &c. That each parcel of the real estate was worth more than the incumbrance upon it. That on or about the 12th of December, 1842, Swain filed his bill in equity, before the vice chancellor

of the 8th circuit, to foreclose the mortgage given to him by the plaintiff; which bill was afterwards taken as confessed, and such proceedings were had that a decree of sale was entered, and the premises were sold pursuant to the decree, about the 19th of April, 1843, to Swain, for $450; leaving a deficiency of $978,19, for which the decree was docketed on the 16th of September, 1844.

The bill then stated, on information and belief, that the mortgages given by Stephens and Wilcox were foreclosed in chancery by Swain, and the mortgages were sold under the decrees, and bid off for sums much less than the amounts due, and that decrees were docketed for the deficiencies, against the plaintiff, for a large amount. That the first mentioned decree has been assigned by Swain to Myrick, the defendant, who resides in the county of Wayne.

That Myrick has commenced a suit on the decree assigned to him, in the common pleas of Monroe county, in the name of Swain; which suit is pending, and that no issue has been joined therein, and no default has been entered. That on or about the 4th of March, 1847, Myrick instituted proceedings under the act to abolish imprisonment for debt, and to punish fraudulent debtors, passed April 26, 1831, against the plaintiff, before John E. Patterson, a judge of Monroe county courts, and obtained a warrant against the plaintiff, upon which he has been arrested by the sheriff of Monroe county, and that proceedings are still pending before the judge; and that the plaintiff has not yet controverted any of the facts on which the warrant issued. The bill prayed that Myrick might answer without oath; that the decree assigned to him might be discharged of record; that Myrick, and all claiming under him, might be perpetually enjoined from enforcing it against the plaintiff; and for a preliminary injunction restraining Myrick from assigning the decree, and from further prosecuting the suit in the common pleas, and the proceedings before Judge Patterson, or any other suit or proceeding founded on the decree, or for the collection thereof.

The bill was sworn to, March 8, 1847. It was presented to

Judge Whiting while at Auburn, holding a court there, upon which he made the following certificate :

" I certify that an injunction shall issue on filing the within bill, according to the prayer thereof.    March 8, 1847.

B. Whiting, V. C."

An injunction was thereupon issued, pursuant to the prayer of the bill, and served upon the defendant about the 9th of March, 1847.    No bond was filed pursuant to the 31st rule of the then court of chancery.

The affidavit of the plaintiff's solicitor, read on this motion, stated that " the injunction was allowed and issued, as deponent has been informed by the messenger whom deponent sent with the papers to obtain said injunction, and believes the same was granted, upon an application made by W. H. Seward, Esq., in open court."    The same affidavit stated that " after said injunction was issued, the same was modified by stipulation between deponent and the solicitor for the defendant, so as to allow the defendant to proceed to judgment at law."    But the stipulation was not produced, and there was reason to believe it was a mere verbal arrangement.

An answer was put in, sworn to by the defendant, on the 19th of March, 1847, in which the giving of the bond and mortgage by the plaintiff to Swain was admitted as stated in the bill ; but the defendant denied all knowledge of any consideration paid by Swain to the plaintiff for the same, and he disavowed any knowledge of the circumstances stated in the bill in relation to the mortgages of Stephens and Wilcox, or the foreclosure thereof.    He also denied, upon information and belief, the agreement between Swain and the plaintiff set forth in the bill, and the circumstances attending the same.    But he admitted the foreclosure proceedings upon the mortgage given by the plaintiff to Swain, the sale of the mortgaged premises, a deficiency of $978,19, and the docketing the decree for that sum, as stated in the bill.    The answer also admitted the assignment of the decree by Swain to the defendant, the commencement of the suit thereon in Monroe common pleas, and that such suit was still

depending, not at issue and no default entered. It also admitted the proceedings against the plaintiff before Judge Patterson, the issuing the warrant, and the plaintiff's arrest thereon, and that the proceedings were pending at the time of filing the bill.

A general replication to the answer was filed.

*T. Hastings & H. R. Selden,* for the defendant.

*J. W. Gilbert & S. Mathews,* for the plaintiff.

WELLES, J.   The defendant moves to set aside the injunction as having been irregularly issued, upon the ground that no bond was filed in pursuance of the 31st rule of the late court of chancery, and because the order allowing the injunction did not direct a provision to be inserted, giving the defendant liberty to proceed to judgment at law, without prejudice to the equitable rights of the plaintiff, notwithstanding the injunction; agreeably to the 33d rule.

Before proceeding to consider the motion to *dissolve* the injunction, I will dispose of the question of *regularity*.

The vice chancellor of the seventh circuit had jurisdiction of the suit, on the ground that the defendant resided in the county of Wayne; and the bill was properly filed before him.

In allowing the injunction, therefore, the act would be regular, whether done by the person allowing it, as an *injunction master* at chambers, or as a *judge of the court of chancery ;* that is to say, it would be regular for him to receive, and act upon, the application, in either capacity. If he did not possess jurisdiction to entertain the suit, it was competent for him to hear the application as an *injunction* master, and if the bill contained sufficient matter for the allowance of an injunction, he could make his certificate that an injunction ought to issue, upon the plaintiff's filing a bond according to the 31st rule of the court of chancery, and have directed a provision to be inserted in the injunction giving the defendant liberty to proceed to judgment at law without prejudice, &c., agreeably to the 33d

rule. In the present case, the bill being properly filed before the officer who allowed the injunction, if he acted as vice chancellor, or as a judge of the court, it was regular for him to make his fiat for the issuing the injunction, absolutely ; without requiring a bond to be filed, or the insertion in the injunction of the provision referred to. In what character did he act in this case? I think where it is competent for the officer allowing an injunction to act in either of two characters, and where it does not appear clearly in which he did act, and as the court of chancery is always open, it should be presumed he acted in the higher office of judge of the court, in preference to that of injunction master; in which he was only empowered to act *ex officio*. (*Melick* v. *Drake*, 6 *Paige's Rep.* 470.)

In my opinion, the injunction was regularly issued.

The defendant also moves to *dissolve* the injunction upon the matter of the bill and answer, on several grounds; which I will proceed to notice in detail. It is objected that the court of chancery had no jurisdiction to restrain a party by injunction from proceeding against his debtor, under the third and subsequent sections of the act to abolish imprisonment for debt and to punish fraudulent debtors. (*Sess. Laws of* 1831, *p.* 396.) This statute, as regards its provisions for compulsory process against contract debtors, is a mere civil remedy. The 1st section abolishes imprisonment for debts due upon contracts generally. Section 2d limits the operation of the first, or rather excepts from its operation, certain specified cases. The 3d, and a number of the sections following, substitutes a new remedy for the creditor against the person of his debtor, in the place of that which the 1st section, limited and qualified by the 2d, had taken away ; in the cases specified in the four subdivisions of the 4th section. It is said to be a statute execution against choses in action and other effects of the debtor not tangible by the ordinary *fi. fa.* (*Moak* v. *De Forrest*, 5 *Hill*, 605. *Ex parte Fleming and another*, 4 *Id.* 581.)

The question, on this branch of the case, is whether the court of chancery, at the time the bill in this cause was filed, had,

and whether this court in the exercise of its equitable powers, has jurisdiction to restrain a party by injunction from proceeding against the person, and equitable interests, of his debtor, under the statute referred to in the cases mentioned. I think there are cases in which such power did exist in the court of chancery, and where it is now possessed by this court. If it were not so, an important branch of the remedial, equitable jurisdiction of the court would be cut off, or very much crippled. The third section of the act provides for two cases in which a creditor may apply for a warrant against his debtor; first, where he has commenced a suit against him; and second, where he shall have obtained a judgment or decree against him. The fourth section declares that no warrant shall issue, unless satisfactory evidence be adduced to the officer that there is a debt or demand due to the plaintiff from the defendant, for which the defendant, according to the provisions of the act, cannot be arrested or imprisoned. Suppose the application for the warrant is founded upon a judgment or decree, and not upon a pending suit; or upon a pending suit, being an action of debt in a court of law upon such judgment or decree, and the defendant is entitled to equitable relief against the judgment or decree, under the well known heads of equity jurisdiction of fraud, accident, or mistake; I have no doubt of the power of a court of equity to restrain the plaintiff by injunction from proceeding under the act, before the judge. If it were not so, a door would be opened for great injustice; the court of chancery would be ousted of a most valuable branch of its jurisdiction, and most important questions, of great delicacy and intricacy, would be transferred to tribunals utterly incompetent, in their structure and summary modes of proceeding, to afford ample and complete relief. I do not think it could have been the intention of the legislature to vest in all the numerous officers referred to in the act such important powers, with exclusive jurisdiction; without subjecting the parties to the control of a court of chancery, in cases proper for its interference.

The objection just considered is founded upon the assumption that the plaintiff had ample relief at law, and the seventh

Frost *v.* Myrick.

section of the act was referred to, which allows the party proceeded against before the judge to controvert any of the facts and circumstances, on which the warrant was issued. To this I think there are several answers. 1. I do not agree that the remedy at law was complete. It is by no means clear to my mind that the judge could inquire into the equitable considerations growing out of the agreement set up in this case; and if he could, it does not follow that he would have the exclusive jurisdiction over them. 2. By the seventh section referred to, the party can only *controvert*, that is deny, the facts and circumstances alleged. In almost every supposable case where the power of a court of equity would become necessary for the relief or protection of the party proceeded against, he would have to do more than simply to controvert the allegations which his adversary would think proper to make. As in this case, he would have to introduce new matters in avoidance. 3. The power of a court of equity to restrain this party from proceeding in his action in the common pleas of Monroe county is undoubted; and that being the case, this court may entertain jurisdiction of the whole subject matter in dispute, upon the ground that having acquired cognizance of the suit for one purpose, it may retain it for all purposes which are necessary, in order to afford complete relief. (*Story's Eq. Jurisp.* § 64.)

It is objected that the bill does not present a case for equitable relief, because it is founded upon an alleged agreement which impeaches a decree in another suit, upon matters arising prior to the entry of the decree. And it is urged, and authorities are cited to show, that a decree cannot be impeached after enrolment, except by a bill of review, or a bill in the nature of a bill of review, charging fraud. The general doctrine contended for by the defendant's counsel is not denied. In the language of Chancellor Kent, in *Davoue* v. *Fanning*, (4 *John. Ch. Rep.* 203,) " It would be most disorderly, and lead to great confusion and endless litigation, if a new and original bill between the same parties and concerning the same matters, could be sustained, while the former decree remained untouched. The decisions

of the court have clearly and wisely established a different rule." The answer however is, that the bill in this case does not seek to impeach the decree mentioned, in the foreclosure suit of Swain against the plaintiff. The agreement set up in the bill contemplated such a decree, and is consistent with it. The agreement was incomplete, and could not be fully operative until the decree was entered; and it is on account of acts subsequent to its entry that the plaintiff complains. The complaint is that the assignee of the plaintiff in the foreclosure suit is unconscientiously enforcing the decree in that suit, for the deficiency, in violation of the agreement of his assignor not to do so, provided he, (the plaintiff in this suit,) would comply with certain provisions of the agreement on his part, which he alleges he has done. I am not able to perceive that the doctrine alluded to would be infringed by sustaining this bill.

It is also contended that the agreement set forth in the bill as the foundation of the relief prayed for, between the plaintiff and Swain, was a *nudum pactum*, being without sufficient consideration. The agreement was, in substance, that Swain would take the lands embraced in the mortgages, and discharge the plaintiff from personal liability; he (the plaintiff) to aid Swain in obtaining the foreclosures and the title to the lands without unnecessary delay, and at the least expense. The consideration of Swain's promise to discharge the plaintiff from personal liability, was the promise of the plaintiff to aid in the foreclosures, and in vesting the title in Swain. It was a case of mutual promises, and the bill alleges a fulfilment by the plaintiff of his part of the agreement.

The question whether the plaintiff's promise to Swain was a sufficient consideration to support the agreement of the latter, will depend upon whether the promise of the former, if performed, would be either a benefit to Swain, or an injury or inconvenience to the plaintiff. Could the plaintiff have aided Swain in the foreclosures and in obtaining the title, either as to the expense, or as respects expedition? It would be too much to say he could not. He could omit to appear in the suits, or to bid or procure bidders at the master's sale, and thus save time

Frost *v.* Myrick.

and expense. Suppose he had paid up the mortgages, or produced, by his exertions, so much competition at the master's sales as to result in a large surplus, as he would have had a right to do, except for the agreement. He would have been entitled to the benefit of that surplus, and Swain would get the amount due him in money, and not the land, which it is alleged is worth more than the amounts of the mortgages. But by the plaintiff's performing his agreement, as he alleges he has done, Swain has got the lands, and thus derived a benefit from the agreement, and the plaintiff, by letting the land go for less than its value, has sustained an injury.

I do not feel authorized, in this stage of the suit, to hold the agreement void for want of consideration, and to dissolve the injunction on that ground. But I think it should be retained until the final hearing of the cause.

The defendant also contends, that if the agreement was valid, the plaintiff's only remedy was by an action at law for the breach of it. I cannot agree to this proposition. I do not think the plaintiff was bound to wait until this deficiency was wrung out of him by execution upon the decree, or by proceedings under the Stilwell act, before his right to redress would attach.

The ground taken upon the argument that the whole equity of the bill is denied in the answer, cannot be sustained. Nearly all the material facts stated in the bill, as constituting the ground for equitable relief, are answered, and some of them are denied only upon information and belief of the defendant. This is not sufficient. (1 *Barb. Ch. Pr.* 640.)

But I am not able to perceive any sufficient reason why the defendant should not be permitted to proceed to judgment in the action commenced in the court of common pleas of Monroe county in the name of Swain, on the decree assigned to him by Swain; without prejudice to the equitable rights of the plaintiff in this suit. And I shall direct an order to be entered to that effect; without costs to either party as against the other.