BROMLEY v. THE PEOPLE.

## Roger Bromley v. The People.

Whether the fraudulent acts of a debtor, occurring without the state,' can be made the basis of proceedings against him in this state, under the Fraudulent Debt- ors' Act,—*Quere*, The court being equally divided in opinion on the question.

The Supreme Court will not on *certiorari* to a commissioner in a case under this act, undertake to weigh the evidence. It is sufficient that there was evidence upon which the commissioner was authorized to act; and that the complaint and accompanying affidavits were sufficient to confer jurisdiction. Per CHRIS- TIANCY J.

The provision in the Constitution of Michigan, excluding cases of fraud from the prohibition of imprisonment for debt, includes as well cases where the fraud is made use of to avoid payment of the debt, as those where it was used in ob- taining the contract creating the debt. Per CHRISTIANCY J.

*Submitted on Briefs June 8th. Decided December 9th*

Certiorari to a circuit court commissioner for Wayne county.

Plaintiff in error was arrested and brought before the commissioner, on two separate complaints, under chapter 166 of Compiled Laws, known as the Fraudulent Debtor's Act, in each of which he was charged by complainants, who had brought suit against him in the Wayne Circuit Court, with having fraudulently contracted debts with them, in the state of Massachusetts, and with having afterwards made a fraudulent assignment of his property in Wiscon- sin, on the pretence of appropriating the same to the payment of his debts, but secretly reserving therefrom a portion of his assets, and bringing them with him to Detroit. The complaints were accompanied by affidavits, proving to the satisfaction of the commissioner the facts charged.

On being brought before the commissioner, plaintiff in error moved to dismiss the proceedings, for the following reasons:

"First. That the affidavits show that the acts com- plained of were done or intended to be done in another state, and not in the state of Michigan.

"Second. That the affidavits do not furnish any evi-

dence of an assignment by defendant of any of his property, with intent to defraud his creditors.

"Third. That there was no proof of facts or circumstances in said affidavits, showing that the debt was fraudulently contracted by the defendant.

"Fourth. That the facts stated in the affidavit were insufficient, under the Constitution and laws of Michigan,. to authorize the arrest of the defendant.

"Fifth. That the proceedings and process are in other respects insufficient to give the circuit court commissioner jurisdiction, or to authorize the arrest of the defendant.

"Sixth. That under the provisions of the present Constitution of Michigan, the defendant could not be imprisoned for debt arising upon contract, except in case of fraud at the inception of the debt."

The Commissioner denied the motion, and made an order, in each case, to commit the defendant.

*H. D. Terry* and *W. Gray* for plaintiff in error.

*Holbrook & Bishop* for defendant in error.

CAMPBELL J.:

The plaintiff in error was arrested and committed by a circuit court commissioner, upon complaints made by two separate creditors, under the chapter of the statutes entitled "Of the punishment of Fraudulent Debtors."— 2 *Comp. L. p.* 1411. The charges found by the commissioner to have been sustained, were for fraud in contracting the' debt in one case, and for fraudulently assigning and disposing of his property in both. No hearing was had upon any facts except those set forth in the preliminary affidavits, as the plaintiff in error objected to the jurisdiction. The complaints were made after the commencement of civil actions on contract, and before judg-. ment.

MICH.—2F.

The objections to the jurisdiction of the officer rest mainly upon the ground that the allegations sustained by him are of acts committed out of this state, in Massachusetts, and in Wisconsin, where the plaintiff in error then resided and did business. It is claimed that these proceedings, whatever may be their ulterior objects, are punitory in their nature, and inapplicable to offenses committed without the jurisdiction.

I think this view is correct, and that no other can be legitimately drawn from the statute.

The chapter of the statutes under which these proceedings are authorized, is not found among those parts of the Revised Statutes relating to civil actions, but occupies a place among miscellaneous proceedings, some of which relate to criminal and some to other special subjects. The title of the chapter is "Of the *Punishment* of Fraudulent Debtors;" a phrase entirely inapplicable to civil proceedings, for the law does not regard actions on contract as punitory. The steps taken are not founded on any breach of contract, and the acts complained of would not be legitimately in issue in an action upon contract. And the proceeding is not had in the suit, or in any way connected with it. But I proceed to examine the act more minutely. Section 1 provides, in express terms, that no person shall be arrested or imprisoned *on any civil process* issuing out of any court of law, or on any execution issuing out of a court of equity, in any suit *or proceeding* instituted for the recovery of money, or damages arising out of contracts. Section 2 contains certain excepted cases. And section 3 applies the proceedings now before us to all cases where, by the preceding sections, a person could not be arrested or imprisoned. These sections, it appears to me, negative, in the strongest possible language, the idea that the process used can be regarded as civil process. But the proceeding itself is equally characteristic. The facts complained of may, and if possible

should be established by the oath of the plaintiff in the suit at law, who could not, under any principle of evidence in force in this state when the law was passed, be a witness in his own behalf. The process of arrest is a *warrant*, and the process of imprisonment a *commitment*, both of which are terms belonging properly and usually to criminal pro-cess. — *Bouv. L. Dic. titles* "*Warrant*," "*Commitment*."

The warrant is issued "*in behalf of the people of this state*," and not on behalf of the plaintiff in the action at law. Upon a decision against the respondent, he is to be com-mitted to the jail of the county, "*to be there detained until he shall be discharged according to law.*" Section 11 pro-vides that a defendant thus committed shall remain in cus-tody in the same manner *as other prisoners on criminal pro-cess*" — thus declaring this, in express terms, to be crimi-nal process.

Leaving for the present this statute, I now refer to the policy of the law in regulating imprisonment in civil and criminal cases. By chapter 172 of the Compiled Laws (2 *Comp. L.* 1449) all persons held on capias or execution in civil actions, are entitled to the liberty of the jail limits upon giving bail to the sheriff against an escape. But under the Fraudulent Debtor act the person imprisoned has not this liberty. By § 5577, chap. 173, of Compiled Laws (2 *Comp. L.* 1456) it is provided that on no pretence whatever shall prisoners on civil and criminal process be put or kept in the same room. And by § 5579 of the same chapter, it is provided that if the sheriff or other officer confine a person held on civil process, in the same room with one held on criminal process, he shall be liable to treble damages to the party injured, and shall also be liable to indictment for mis-demeanor.

The law is certainly express enough in the difference between civil and criminal process; and when it regards the confinement together of persons held on different processes as an indictable offense, we can hardly suppose that when

it requires a person to be confined "*in the same manner as others on criminal process,*" it means that he is held on civil process.

But to return to the statute. It is provided by § 13 of the Fraudulent Debtor act "*that the fees and compensation of all officers and witnesses,* performing services under the provisions of *this chapter shall be the same as are or may be provided by law in criminal cases.*" This is an additional evidence of the character to be affixed to the proceedings.

We find then the following statutory characteristics of the proceeding: 1. It is issued under a statute which declares expressly that no person shall be arrested or imprisoned on any civil process issuing out of any court of law, in any proceeding for recovering money or damages under a contract. 2. It is sustained upon the testimony of the party who sues in the action at law for his own benefit. 3. It is instituted by a "*complaint.*" 4. The first process is a "*warrant.*" 5. The proceeding is in behalf of the people. 6. The defendant is committed and confined on criminal process, and among criminals. 7. The fees are payable as in criminal cases, and the People bear the expense— the complainant being only liable in case the complaint is dismissed.

I can entertain no doubt whatever as to the nature of these proceedings. And I can not believe that the act therefore was intended to reach or punish foreign frauds.

Even if the proceeding were a civil one there would be such difficulties in the way of justice, that I can not believe foreign acts could be legitimately embraced within the statute. A defendant falsely accused by an interested creditor of acts done at a remote place, has no means afforded him of obtaining proof. The law provides no means whatever of obtaining the depositions of absent witnesses. He is completely at the mercy of his adversaries. I can attribute to the act no meaning which can permit such injustice.

But regarding it as a criminal proceeding, the matter would admit of no doubt.

The jurisdiction is sought to be maintained on the ground that the proceeding is in fact merely to aid the plaintiff in securing a remedy for himself. And reference is had to certain authorities in New York to sustain this view. In *Frost v. Myrick*, 1 *Barb.* 362; *Ex parte Fleming*, 4 *Hill*, 581; and *Moak v. DeForrest*, 5 *Hill*, 605, cited by counsel, it is undoubtedly laid down that the proceeding is mainly to accomplish civil purposes, and it is declared to be substantially a civil proceeding. But with the exception of the latter case, the character of the form of the proceeding, as a criminal proceeding, is not denied; and in that very case the decision of the court in *Lynde v. Montgomery*, 15 *Wend.* 461, is referred to with approbation. Yet in *Lynde v. Montgomery*, the only question raised or discussed was whether the process was civil process, and it was held, after a careful analysis of the statute, to be criminal and not civil. It is exceedingly doubtful whether, under either the New York statute or our own, the complainant, upon an assignment has any exclusive rights. — See *Hall v. Kellogg*, 13 *Barb.* 603; and *Spear v. Wardell*, 1 *Comst.* 144 there cited.

But whether the plaintiff be or be not entitled to exclusive benefits, is in my judgment of no account. That a proceeding is had by the People for the benefit of a private suitor, can not change its character as a criminal and punitory proceeding, if such be its real nature. The state can not punish foreign crimes under any such claim. The People can not complain until they are injured, and they can not be injured by an act done abroad by strangers. The coming of a person within the jurisdiction can not change his previous foreign acts into injuries against this state or its authorities.

This is not the only instance in which criminal proceedings are provided for to promote civil remedies. Our statutes, in chapter 121 of Compiled Laws (2 *Comp. L. p.*

478 SUPREME COURT OF MICHIGAN.

BROMLEY v. THE PEOPLE.

1127) provide fully for "*proceedings as for contempts to en-. force civil remedies, and to protect the rights· of parties in civil actions.*" No object could be more plainly expressed. But the New York Court of Errors, affirming the decrees. of the chancellor and vice chancellor, held in *Spalding v. The People,* 7 *Hill,* 301, that a fine imposed for the benefit of a party under their statute (which is the same as ours), was not a debt discharged by the United States Bankrupt law, and they based their decision entirely on the ground that it was a criminal proceeding, and that its object as a private remedy could not change its character. This decision· was affirmed by the Supreme Court of the United States in *Spalding v. The People of New York,* 4 *How.* 21.

I am therefore of opinion that the judgments of the commissioner should be reversed.

MARTIN Ch. J. concurred.

CHRISTIANCY J.:

The first and most important question in this case (for though there are two complaints, I shall speak of them. generally as one) is whether the acts and conduct of the defendant occuring without this state,. tending to show that he fraudulently contracted the debts, or that he assigned, removed or disposed of his property with intent to defraud his creditors, can, when he is sued here for the debt, be given in evidence to sustain a proceeding against him entirely auxiliary to, and dependent upon the suit, under sections three to sixteen inclusive of chap. 166 Compiled Laws,, known as the Non-imprisonment, or the Fraudulent Debt- .ors act?

It is contended by the defendant that this is a criminal prosecution; that the acts complained of, having occured without the state, and beyond. the operation. of its laws, can not be tried or punished here, and hence that the commissioner could have no. jurisdiction.. This objection can rest.

only on the ground that this is, in its nature, essentially a criminal prosecution, for the punishment of the acts in question as criminal offenses.

This question is not therefore to be determined merely by the form of the process, or of the proceedings. These forms are arbitrary, and such as the Legislature saw fit to provide; and it would be easy for the Legislature to make many of the forms usually adapted to criminal proceedings, equally applicable to civil remedies, and *vice versa*. If it be said that these forms furnish an inference of the intention of the Legislature to make the proceeding a criminal one, it may be replied that such an inference is more than counterbalanced by a contrary inference, to be drawn from the fact, that such a construction would bring the proceeding directly within the prohibition of the Constitution then in force (*Art.* 1, *Sec.* 10) which provides that, "In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of the vicinage;" a provision which we can not, without very strong evidence, suppose they intended to violate.

No stronger inference of the intent to make this a criminal prosecution can be drawn from the title of the chapter, nor from the relative position which it occupies among other provisions in the Revised Statutes, for reasons which will presently appear. The act was first passed in 1839, as a separate act, under the title of "An act to abolish imprisonment for debt, and to punish fraudulent debtors." It was copied almost literally from the act of New York on the same subject, and under the same title, passed April 26th, 1831, dictated by the same policy, and in every feature bearing upon the case before us is identical with that of New York. Here, as there, it was the first act which abolished imprisonment for debt; which, up to the date of that act, prevailed here essentially as at common law; except that the growing humanity of the age had led to the passage of statutes which, in several

important particulars, had softened the rigor of the imprisonment; among other things, forbidding the confinement of debtors with criminals, and giving to the debtor the benefit of the jail limits, on his executing a bond, with surety, for the payment of the debt, if he should depart the bounds of the county.

Still, actions for the recovery of any money demand were commenced by capias; bail was required, and in default of bail, the defendant went to prison. The plaintiff was entitled to a *capias ad satisfaciendum* upon his judgment, and in default of payment, to the imprisonment of the defendant, subject to his qualified right to the jail limits, on giving security as already mentioned.

This was punishing the honest as well as the fraudulent debtor, without distinction; and this *punishment* of the debtor was part of the avowed object of the common law, as a means of compelling payment. Thus Blackstone (3 *Com.* 415) speaking of the *capias ad satisfaciendum*, says : "When a defendant is once in custody upon this process, he is to be kept in *arcta et salva custodia;* and and if he be afterwards seen at large, it is an escape, and the plaintiff may have an action thereupon against the sheriff for his whole debt. For, though upon arrests on what is called mesne process, being such as intervenes between the commencement and end of a suit, the sheriff, till the statute 8 *and* 9 *W. III. C.* 27, might have indulged the defendant as he pleased, so as he produced him in court to answer the plaintiff at the return of the writ, yet, upon a taking in execution, he could never give any indulgence; for in that case confinement is the whole of the debtor's punishment, and of the satisfaction made to the creditor."

It will not be contended that *punishment* by imprisonment under a *ca. sa.* was in any respect criminal punishment; yet it is, I think, only this idea of punishment, as a means of compelling payment, which is kept up by the

statute in the proceeding before us; since this proceeding takes the place, substantially, of the *capias ad respondendum*, of bail, and of the *capias ad satisfaciendum;* with this important difference only, that under the old system the punishment was inflicted alike upon the honest and the dishonest debtor.   And while it was the object of this statute to relieve the honest and unfortunate debtor from this punishment, it was equally the object, not only to continue that of the dishonest and fraudulent debtor, and to provide more efficient means for securing the application of his property to the payment of the debt, but to deprive him of the benefit of those ameliorations of the punishment, which the growing humanity of the age had already introduced, for the sake of the honest debtor, and the benefit of which, while no distinction was made between the honest and dishonest, had been equally enjoyed by both, but which never would have been granted to the latter for his own sake.   For this reason the fraudulent debtor was deprived of the benefit of the jail limits, and of that provision of the statute which forbade the imprisonment of debtors with criminals.   It is true the statute (§ 11) provides that "he shall remain in custody in the same manner as other prisoners on criminal process, until," &c. But the utmost that can be claimed from this language is that the process, or warrant of commitment, is designated as criminal process; but this would not alter the nature of the proceeding on which the commitment was based, which is still to be determined by its nature, object and effect.   Should a statute designate the summons or execution, in an action of assumpsit before a justice, by the name of criminal process, but at the same time define all the proceedings and objects of the suit as now understood, the action would not be thereby changed into a criminal prosecution; things are not changed by a change of their names merely.   If, therefore, it shall be found that the proceedings now in question, which are described

and regulated with great particularity by the statute, are, in their nature, object and effects, but civil proceedings for the collection of a debt, they will not be converted into a criminal prosecution, by the mere *form* of the *procedure*, nor by the *name* given to the *process* by which they are commenced or carried into effect.

The seventeenth section of the chapter (like the 26th of the New York act), does provide for a criminal prosecution, strictly as such, for certain acts of fraud therein declared to be misdemeanors; but this is entirely distinct from the proceedings authorized by the previous portions of the chapter, as a civil remedy for the creditors, and of itself would justify the title given to the chapter. If the prosecution were under this section, for the purpose of holding the defendant to his criminal responsibility, the acts of the defendant constituting the offense must have occurred in this state. And if, on an examination under the previous portion of the chapter intended as a civil remedy for the creditor, it should clearly appear to the officer that one of the offenses mentioned in the seventeenth section had been committed by the defendant within the state, he might, perhaps, under section eighteen, require him to recognize for his appearance at the proper court, to answer for the criminal offense: this may also be done in other civil cases. But if, in such case, the acts occurred out of the state, they would constitute no criminal offense under the statute. This could not, therefore, have occurred in the case before us, and the whole return shows there was no such attempt.

But the proceedings authorized under the first sixteen sections of this chapter, and which were had in the present case, will be found, on examination, to be in their nature, object and effect, merely auxiliary to the collection of the debt; a part of the civil remedy for that purpose, and with that effect only; partaking no more of the real nature of a criminal prosecution than the old remedy for taking bail, and the imprisonment under the *ca. sa.*

All the essential characteristics of the proceedings differ in their nature and object from any just theory of a criminal prosecution.

I. Without having first either recovered a judgment or commenced a suit for the debt, no such proceeding can be instituted.

II. The proceeding is entirely dependant upon, and collateral to, and must stand or fall with, the suit or judgment.

III. The proceeding must be before the court in which the suit is brought, or a commissioner (who is an officer of the court) or the justice before whom the suit was brought or judgment obtained. (How far the amendment of 1858 may affect this in the case of a circuit judge, it is not necessary here to consider, as this proceeding was had before).

IV. The defendant may himself be a witness and answer the complaint by his own oath; and though the complainant's oath is received, it is only to the written complaint, not as a witness on the examination. And as to the hardship upon a defendant in allowing acts out of the state to be proved, without the power of taking depositions, &c.—this is no greater hardship upon the defendant than upon the plaintiff: the oath of both is allowed, while under the old law for taking bail, that of the plaintiff only was received. In this respect even a dishonest debtor has now an advantage not allowed to the honest debtor under the old law, nor even yet allowed when the cause of action does not arise upon contract.

V. The defendant is not to be committed to prison 1st. If he pay the debt, costs, &c.; or 2d. If he give security for the payment within ninety days, if judgment has been recovered; or, if not, then within ninety days after it shall be recovered; or 3d. If he enter into a bond to complainant with sufficient sureties, conditioned to apply, within thirty days, for an assignment of all his property, and for a discharge under the 143d chapter of the Revised Statutes,

and if this bond be forfeited, the plaintiff recovers upon it the amount of the judgment in the principal cause.

VI. After the defendant has been committed to prison, he is to be discharged, 1st. If the judgment in the civil suit for the debt should not be for the plaintiff; or, 2d. If he assign his property, and obtain a discharge under the 142d or 143d chapter of the Revised Statutes; or 3d. If he pay the debt or demand; or 4th. If he secure the payment, or 5th. If he execute a bond with sufficient surety, conditioned for an assignment and discharge under the 3d subdivision of the 10th section, as already mentioned.

Certainly these are strange characteristics of a criminal prosecution, though perfectly in harmony with a civil proceeding for the collection of a debt; and yet these are all the really essential characteristics, which are of the nature and essence of the proceedings, and not merely matters of form, or mode of procedure. The fact that the proceeding is in the name of the people, and that the fees of the officers and witnesses, when not paid by complainant or defendant, are to be paid by the public, can not alter the essential nature of the proceedings.

The views which I have above expressed in reference to this statute, and the proceedings in question, are fully sustained by the courts of New York where the statute originated. It is true, in *Lynde v. Montgomery*, 15 *Wend.* 461, the supreme court held that the warrant was not civil process within the meaning of 2 *Rev. Stat.* 230, § 26, which provided that attachment might issue when defendant avoided the service of civil process; but this decision seems to have turned more upon the form of the process than the nature of the proceeding. The court, as I infer from the decision, which is neither full nor clear, seem to have taken the view that the warrant, if based upon any of the frauds made criminal by the 26th section of their act (our 17th section), might be used either as the basis of the civil remedy for the benefit of the creditor, or of a criminal prosecution un-

der section 26, or for both purposes, under the 28th section of the act; and as the question arose in that case upon the warrant alone, before any thing had been done under it, it could not, in that stage, be known whether it was to be used for one or the other purpose, or for both; and as it was criminal in form, it was, under such circumstances, not to be treated as merely civil process. A similar view might perhaps be taken of the warrant under our statute, considered with reference to the 17th and 18th sections, before any proceeding had upon the warrant. ˙ But such is not the position of the case before us, in which the Commissioner's return shows clearly that no proceeding was had or intended to be had, under the criminal provisions of the act.

But in the subsequent case of *Moak v. DeForrest*, 5 *Hill* 606, the supreme court of the same state, without expressly overruling *Lynde v. Montgomery*, decided that the warrant was not criminal process within the meaning of their statute, which allowed warrants on criminal prosecutions to be executed in any part of the state; and that it could, therefore, only be served in the county where issued. The court say, "But though the warrant is in the form of criminal process, and the proceeding assumes, in some respects, the nature of a criminal prosecution" (for which purpose only they refer to *Lynde v. Montgomery*) "yet in its use, form, and effect, it is nothing more than a somewhat summary civil proceeding, to enforce the collection of a debt due upon contract;" that "it was intended as a substitute for an execution against the person, and is predicated upon certain alleged frauds, committed by the debtor with a view of eluding payment. The legislature (say the court) intended to abolish imprisonment for debt, in respect to all honest debtors, but still to continue it in respect to dishonest ones, with certain specified qualifications."

In *Frost v. Myrick*, 1 *Barb.* 362, the same view is taken of the statute and the proceeding in question, and it was further held that an injunction was properly issued to restrain the proceedings in question against the debtor.

The same thing had been previously decided by the
same court, in *Ex parte Fleming*, 4 *Hill*, 581, where Judge
Conklin had issued an injunction from the United States
District Court, to restrain similar proceedings under the
same statute. "No one can doubt (says Cowen J.) that
the main object of the statute is the same as that of the
old law giving a *ca. sa.*"

In *Townsend v. Morrell*, 10 *Wend.* 577, it was decided
that, though the warrant be for having fraudulently dis-
posed of, or removed property (which constitutes a crime
under their 26th section) yet upon complying with any
of the provisions of the 10th section (same as our tenth
section), the defendant must be discharged from the im-
prisonment. "Payment or security" (say the court) "atones
for all the fraud committed or intended against the cre-
ditor."

In view of the principles above discussed, and the au-
thorities cited, I can have no doubt that this is to be
treated as a civil proceeding, and that the case before us
stands upon the same ground, as if the acts going to
show the dishonesty of the defendant had all occurred in
this state.

As to the second, third, fourth and fifth objections,
raised by the defendant, it is sufficient to say that the com-
plaints and accompanying affidavits clearly show sufficient
facts to authorize the commissioner to issue the warrant,
and to take cognizance of the case, and as I think amply
sufficient to warrant him in finding both that the debts
had been fraudulently contracted, and that defendant had
assigned, removed and disposed of his property with in-
tent to defraud his creditors.

It is not for this court on certiorari to weigh the
evidence: it is enough that there was evidence upon which
the Commissioner was authorized to act; that the com-
plaints and affidavits were sufficient to confer jurisdiction.
For these purposes they were ample; and as the defend-

ant did not attempt to controvert any of the facts stated in the complaints and affidavits, it was clearly the duty of the commissioner to commit him, as he did. See *Ex parte Spencer v. Hilton*, 10 *Wend.* 608.

But the 6th objection is, that the proceedings in question can only be maintained under our present Constitution, in cases where the debt was fraudulently contracted. If this were so, I do not perceive how the question can be raised in the present case; as the return of the commissioner shows clearly, I think, that in both complaints the debts were charged to have been fraudulently contracted, and the finding of the commissioner is that the allegations of each complaint were sustained — a finding which I think was authorized by the evidence in each case. It is true the warrant of commitment, in one of the cases, omits to mention that this precise point had been found by the commissioner, though it states the finding that the allegations of the complaint were sustained; and this the return shows in both cases. But if this did not sufficiently appear, I am unable to see any force in the objection. The Constitution, Art. VI. § 33, declares "no person shall be imprisoned for debt arising out of, or founded on a contract express or implied, except in cases of fraud or breach of trust, or of moneys collected by public officers, or in any professional employment.

I think this provision was understood and intended to be in precise accordance with the principles of our Nonimprisonment law, and that the "cases of fraud" mentioned in this section, include as well cases where the fraud is made use of to avoid payment of, as those where it was used in obtaining the contract creating, the debt.

I am therefore of the opinion there is no error in the proceedings before the commissioner, and that those proceedings should be, in all things, affirmed.

MANNING J. concurred.

BROMLEY v. THE PEOPLE.

The court being thus equally divided, the decisions of the commissioner were confirmed.