## WILLIAM W. LANGDON v. THE JUDGES OF THE WAYNE CIRCUIT COURT.

*Contempt of court—Bribery—Jurisdiction—Fines.*

1. The circuit courts of this State have *power* to punish, as for a contempt of court, any person guilty of an *attempt* to bring about a disagreement of a jury in a pending suit by bribery.

2. When affidavits are filed showing that *attempts* have been made to bribe jurors or witnesses in a cause, it is the province of the court, *on its own motion*, to proceed to vindicate the administration of the law by attaching the person guilty of misconduct, whether a party to the suit take action or not, under How. Stat. chapter 256: which proceedings may be prosecuted although no party be aggrieved by the misconduct for which the attachment issued.

3. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

   *a*—Jurisdiction, when applied to courts, is the *power* to *hear* and *determine* a cause or matter.

   *b*—Courts of record in this State have *inherent* power to hear and determine all contempts of court which the superior courts of England had at the common law; and the statutes have not undertaken to limit or prohibit their jurisdiction, but are in affirmation of this common-law power, and have regulated the *mode* of proceeding, and prescribed what *punishment* may be inflicted.

   *c*—The classification in How. Stat. § 7234, embraces mostly those contempts which are offenses against the court as a tribunal of justice, tending to lessen its dignity, contemn its mandates, impair the respect due to its authority, or interrupt its proceedings, which, if committed in the *immediate view* and *presence* of the court, may be punished *summarily;* and in other cases the party must be notified of the accusation, and have a reasonable time to make his defense.

   *d*—*Two* purposes are apparent in the statutory enactments of chapter 256, How. Stat.:

   1. To enforce the civil rights and remedies of parties to an action pending in the court.
   2. To protect the rights of parties in civil actions.

*Each* is for the benefit of suitors, but one is for the *particular* benefit of a suitor in enforcing his civil rights, and affords a particular remedy; while the other is a *general* benefit to *both* parties to protect their rights in the action. The one is a sword of execution; the other a shield for protection.

*e*—Whether the fine is imposed under a chapter relating to punishing certain misconduct as for a *criminal* contempt, or for a contempt under How. Stat. chapter 256, when paid, it goes into the library fund, under the Constitution and laws of this State. The proceeding in *either* case is regarded as a criminal proceeding, and the fine imposed, as punishment for a wrong done the State, and goes to it, and not to the party to the pending suit in which the contempt was committed.

*Certiorari* to the Judges of the Wayne circuit court. Argued June 7, 1889. Writ quashed and record remanded October 11, 1889. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*F. H. Canfield* (*R. E. Frazer*, of counsel), for petitioner.

*Charles Flowers*, for respondents.

CHAMPLIN, J. William W. Langdon sued out a writ of *certiorari* to the judges of the Wayne circuit court to bring before this Court, for review, certain proceedings then pending before the court wherein Langdon had been brought before the court upon attachment to answer for an alleged contempt.

In his petition for the writ he alleged that on the second day of February, 1889, proceedings were instituted in the circuit court for the county of Wayne against him for the purpose of punishing him, as for a criminal contempt, for an alleged unlawful interference on his part with the proceedings in an action tried in said court wherein James Hughes, by his next friend, was plaintiff, and the Detroit, Grand Haven & Milwaukee Railway Company was defendant; that he was brought before the court upon a warrant, and gave bail. The warrant and affidavits upon which it was based, are set out as exhibits.

That upon his appearance before the court it made an order that he should answer certain interrogatories, which are set out in an exhibit, which he answered, and filed therewith certain affidavits, copies of which are also set out as exhibits; that thereupon he, by his counsel, moved the court to dismiss said proceedings on the ground that they were not warranted by any statute law of this State, and that the court had no jurisdiction to entertain such proceedings, which motion was denied; that upon the filing of his answers to the interrogatories the circuit court ruled that deponent should be examined upon an oral examination in open court touching the matters relating to the said alleged contempt; and that said proceedings are being carried on as a public prosecution against him by Charles Flowers, Esq., as attorney appointed by the court for that purpose.

He assigns error on the part of the court in refusing to dismiss and quash the proceedings, as follows:

"1. That the alleged unlawful interference set forth in said warrant, and affidavits upon which the same was issued, does not constitute a criminal contempt under the provisions of chapter 255 of Howell's Statutes of this State, or any statute or law of this State.

"2. That said court has no jurisdiction or legal authority to entertain said proceedings to punish, as for a criminal contempt, under the provisions of said chapter.

"3. That the court has no jurisdiction or power to entertain said proceedings under the provisions of chapter 256 of Howell's Statutes, inasmuch as said proceedings are not instituted nor carried on for the purpose of enforcing any civil remedy, or to protect the rights of any party to any civil action pending in said court.

"4. That said proceedings upon their face are without warrant of law, and beyond the jurisdiction or power of said court."

The circuit court of Wayne county, by George Gartner, one of its judges, made return to the writ of *certiorari*, from which it appears that, upon the fourteenth day of Jan-

uary, A. D. 1889, there came on for trial in the circuit court for the county of Wayne, before him and a jury, a cause wherein one James Hughes, by his next friend, was plaintiff, and the Detroit, Grand Haven & Milwaukee Railway Company was the defendant, the trial of which cause continued from day to day, and terminated on the eighteenth of January, A. D. 1889, when a verdict was rendered in favor of the plaintiff.

That on the twenty-ninth of January there were filed in same court two affidavits,—one made by George W. Bryce, and one by James H. Brady. The contents of these affidavits are not material, and need not be stated, as they were not the basis of the attachment issued against Langdon.

The return further shows that upon February 2 there were filed in said court two affidavits,—one made by George F. Robison, and one by John Nicholson.

The affidavit of Robison was to the effect that he was personally acquainted with Langdon, and met him at Lansing, Michigan, on the twenty-ninth of January, when Langdon asked him if he was not the attorney of Nicholson in the matter talked of in the newspapers about contempt of court, and he replied that he supposed he was, or would be if proceedings against him for the matters talked of in the newspapers should ever be taken into court; that Langdon then told him that he had learned that Nicholson had been arrested and taken before the court, and urged him to use all means possible to clear Nicholson of the charge, saying it was a great shame that he should be arrested, or charged with such an offense, and that he had plenty of friends who would see him through; that he replied that, if he should be retained, he would use his best endeavors to see that he had a proper defense.

That on the second day of February Langdon met him in Detroit, and asked him how Nicholson's business was getting on, and he replied that he thought that Nicholson would

come out all right, and Langdon asked if there would be any money needed; that he replied that he had got his pay, and did not think there would be any more money needed; that Langdon then asked if there would not be money needed to pay Nicholson's fine in said contempt proceedings; that, if any was needed, he would see that he was furnished with all that was necessary, and urged him to use every possible means to clear said Nicholson of said charge; that he replied that, as he then understood matters, Nicholson was all right, and would probably escape without much punishment.

The affidavit of Nicholson, made on the same day that Robison swore to the above conversation, is as follows:

"STATE OF MICHIGAN, ⎱ ss.
    County of Wayne,  ⎰

"John Nicholson, being duly sworn, says he resides in the city of Detroit, in said county.

"That upon the fourteenth day of January, 1889, there came on for trial in the circuit court for the county of Wayne, before Hon. Geo. Gartner, one of the judges of said court, a cause theretofore commenced and pending in said court, wherein James Hughes, by his next friend, was the plaintiff, and the Detroit, Grand Haven & Milwaukee Railway Company was the defendant, and upon the day last aforesaid a jury was duly impaneled and sworn to try said action; that among the jurors so selected, impaneled, and sworn was one James H. Brady, and also one Fitzsimons, with both of whom this deponent is well acquainted.

"That said trial continued in said court until Friday, the eighteenth day of January, 1889, when the same was concluded, and a verdict was rendered therein.

"That upon Thursday, the seventeenth day of January, 1889, this deponent met one William W. Langdon, a resident of Detroit, and had a conversation with said Langdon, when said Langdon asked deponent if he (deponent) was acquainted with any of the jurors in said above mentioned cause; that deponent replied that he was acquainted with the said Brady, one of the jurors so sworn as aforesaid; that said Langdon asked deponent how well he knew him, and deponent replied that he knew him quite well; that said Langdon then related to deponent some of the merits of the case, and told deponent that, if a disagreement of the jury could be procured,

this deponent might offer one of the jurors $100. Deponent replied that that would be a very serious thing to do, and said Langdon told him there would be no danger. Deponent then said to Langdon that he would have to think about the matter.

"That, on the evening of the same day, said Langdon came to deponent's house, and then and there again said to this deponent that he (Langdon) would authorize deponent to offer said Brady $100, and he (Langdon) would see that the $100 would be paid, if a disagreement of the jury aforesaid should be secured; and further said to deponent that, if there was any other person upon the jury with whom he was acquainted, this deponent might make to him the same offer, and he (Langdon) would see that the same would be paid.

"That in pursuance of the statement so made to deponent by said Langdon, and this deponent being authorized by the said Langdon, deponent met the said James H. Brady, a juror upon the said jury so sworn in said action as aforesaid, in the city hall, and told him (said Brady) that he (deponent) was authorized to offer him the sum of $100, to be paid to him (the said Brady) if the jury disagreed; that subsequent to the time when the said conversation occurred between the deponent and the said Brady, deponent met the said Fitzsimons, another juror upon said panel, and, in pursuance of the authorization and statements made to deponent by said Langdon as aforesaid, deponent told said Fitzsimons that if he would make a disagreement in said cause, he (the said Fitzsimons) could make $100.

"That deponent was arrested upon an attachment issued out of said court on the twenty-ninth day of January, 1889, and that since the issuing of the said writ of attachment, and the giving of a recognizance by this deponent to appear in said matter, he has, upon different occasions, met said Langdon, and the said Langdon has repeatedly since that time stated to this deponent to keep a stiff upper lip, and that he (Langdon) would see him through, and, if any money was desired, he (the said Langdon) would put it up.

"JOHN NICHOLSON.

"Subscribed and sworn to before me this second day of February, 1889.

"WALTER BARLOW,
"Notary Public, Wayne County, Michigan."

Upon filing these affidavits an order was made as follows:

"At a session of the circuit court for the county of Wayne, held at the circuit court rooms in the city of Detroit on the second day of February, A. D. 1889.

"Present, Hon. C. J. Reilly, Hon. H. N. Brevoort, Hon. Geo. Gartner, Hon. Geo. S. Hosmer, Circuit Judges.

"In the Matter of William W. Langdon, for an alleged unlawful interference, etc.

### "Before JUDGE GARTNER.

"On filing the affidavits of John Nicholson and George F. Robison in said matter, and it appearing to the court from the matters therein alleged that an alleged unlawful interference on the part of said William W. Langdon was made by him with the proceedings in the action tried in said court wherein James Hughes, by his next friend, was the plaintiff, and the Detroit, Grand Haven & Milwaukee Railway Company was the defendant, during the trial of said action, it is therefore ordered that an attachment do issue to the said William W. Langdon, and that he be brought before the court to answer for such alleged misconduct, and that a copy of the affidavits upon which this order is based, together with a copy of this order, be served upon him at the time of the service of such attachment."

And thereupon an attachment was issued against Langdon as follows:

"STATE OF MICHIGAN, ⎱ ss.
County of Wayne, ⎰

"THE CIRCUIT COURT FOR THE COUNTY OF WAYNE.

"To the Sheriff of the County of Wayne, Greeting:

"In the name of the people of the State of Michigan, you are commanded to take William W. Langdon, if he be found in your bailiwick, and him safely keep so that you may have his body before our circuit court for said county, at court-room No. 3, in the court-house in the city of Detroit, on Monday, February 4, A. D. 1889, at 9 o'clock A. M., to answer unto an alleged contempt of said court, in unlawfully interfering with the proceedings of said court in an action tried before a jury in said court, wherein one James Hughes, by his next friend, was plaintiff, and the Detroit, Grand Haven & Milwaukee Railway Company was defendant, which cause is now depending, by which the rights of said plaintiff in said cause were calculated to be defeated, impaired, impeded, or

prejudiced, as appears by the affidavits of John Nicholson and George F. Robison, filed this day, all of which shall then and there be made to appear, and of this writ make due return.

"Witness the Honorable Cornelius J. Reilly, presiding circuit judge of the circuit court for the county of Wayne, this second day of February, in the year of our Lord one thousand eight hundred and eighty-nine.

"WILLIAM P. LANE, Clerk.
"[Seal.]        By William May, Deputy Clerk."

Upon this writ Langdon was arrested and brought before the court, and was let to bail in the sum of $1,000.

The return shows that upon Langdon's appearance before the court upon the fourth of February certain interrogatories were filed, signed "Charles Flowers," which were entitled, and contained the recital following, viz.:

"THE CIRCUIT COURT FOR THE COUNTY OF WAYNE.

"In the Matter of William W. Langdon, for an alleged unlawful interference with the proceedings in an action tried in said circuit court wherein James Hughes, by his next friend, is plaintiff, and the Detroit, Grand Haven & Milwaukee Railroad Company is defendant.

"The said William W. Langdon having been arrested upon an attachment heretofore issued, and having been brought into court to answer for the alleged misconduct on his part in interfering with the proceedings in the said cause:

"It is now ordered by the court herein that said William W. Langdon make. written answer on oath, on or before the ninth day of February, 1889, to the following interrogatories."

Then follow the interrogatories signed "Charles Flowers."

The follwing order also appears to have been made and entered, to wit:

"At a session of the circuit court for the county of Wayne, held at the circuit court rooms in the city of Detroit, on the fourth day of February, 1889.

"Present, Hon. C. J. Reilly, Hon. H. N. Brevoort, Hon. Geo. Gartner, Hon. Geo. S. Hosmer, Circuit Judges.

"In the Matter of William W. Langdon for an alleged unlawful interference, etc.

"Before JUDGE GARTNER.

"The said respondent having been brought before the court by attachment, and the court having directed interrogatories to be filed, and that the said respondent file answers thereto on oath, on motion of F. H. Canfield, Esq., counsel for respondent, it is ordered that said respondent file answers to said interrogatories on or before Saturday, February 9, inst.

"It is further ordered that the hearing of said matter be adjourned to Monday, February 11, inst., and that said respondent be remanded into the custody of the sheriff of Wayne county, unless he execute to the people of the State of Michigan a recognizance in the sum of $1,000 with two sureties, to appear upon the adjourned day, and from day to day, until the determination of said matter."

Langdon filed written answers on oath to the interrogatories, and with them the affidavits of several persons confirmatory of such answers. These answers and affidavits were all entitled in the same manner as the interrogatories. By the answers filed he fully denied the facts set forth in the affidavit of Nicholson, and explained the conversations with Robison, so as to fully purge himself of the alleged contempt. He also supplemented his answers with his own affidavit.

On February 11 the matter was taken up, when Mr. Canfield for respondent read the answers and affidavits, at the conclusion of which he asked that Mr. Langdon be discharged, claiming that he had purged himself of any suspicion of wrong in the matter. Mr. Flowers then stated to the court that—

"We desire, under the statute, to controvert the facts set forth in the answers to the interrogatories."

And for that purpose he desired to have Mr. Langdon sworn; to which request respondent's counsel interposed no objection. The court directed Mr. Langdon to take the stand, and he was sworn, and was examined by Mr. Flowers.

As we cannot pass upon the merits of the controversy, it is not necessary to notice the testimony elicited.

It appears that at some time subsequent to the examination of Mr. Langdon, and before Mr. Flowers had concluded his controverting proofs, a motion was made in behalf of the respondent to quash the proceedings, upon what grounds is not stated, but presumably those assigned in the petition for *certiorari*. The motion was heard by the full bench of judges, and overruled; Judge Gartner delivering the opinion of the court, in which he construes chapter 256, How. Stat., as having a dual object, namely, to punish contempt of court by fine or imprisonment, or both, and, if there has been an actual loss, to order a sufficient sum to be paid to indemnify the injured party.

The respondent then sued out the writ of *certiorari* from this Court to review the proceedings upon the question of jurisdiction.

The *question* of the jurisdiction of the circuit court for the county of Wayne to entertain the proceedings at all is the *only one* involved here.

Jurisdiction, when applied to courts, is the power to hear and determine a cause or matter. Courts of record in this State have inherent power to hear and determine all contempts of court which the superior courts of England had at the common law; and the statute has not undertaken to limit or prohibit their jurisdiction in the matter of contempts. The statutes are in affirmation of the common-law power of courts to punish for contempts, and, while not attempting to curtail the power, they have regulated the mode of proceeding and prescribed what punishment may be inflicted

The statutes have dealt with the subject of contempts in two separate chapters. These were first enacted in their present shape in the revision of 1846, and have remained

unchanged until the present time. Under a title which says—

" General provisions concerning courts, and the powers and duties of certain judicial officers,"—

By section 7 (How. Stat. § 7234) it is enacted:

" Every court of record shall have power to punish, as for a *criminal* contempt, persons guilty of either of the following acts, and *no others:*

"1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority.

"2. Any breach of the peace, noise, or disturbance, directly tending to interrupt its proceedings.

"3. Willful disobedience of any process or order, lawfully issued or made by it.

"4. Resistance willfully offered by any person to the lawful order or process of the court.

"5. The contumacious and unlawful refusal of any person to be sworn as a witness; and when so sworn, the like refusal to answer any legal and proper interrogatory.

"6. The publication of a false or grossly inaccurate report of its proceedings; but no court can punish as a contempt the publication of true, full, and fair reports of any trial, argument, proceedings, or decision had in such court."

The punishment for these contempts is limited to a fine not exceeding $250, or imprisonment in the county jail a period not exceeding 30 days, or both; but in case of a commitment for non-payment of a fine, the committed person shall be discharged at the end of 30 days.

Such contempts committed in the immediate view and presence of the court may be punished summarily; in other cases the party shall be notified of the accusation, and have a reasonable time to make his defense. If committed, the warrant must set forth the particular circumstances of the offense. These sections do not extend to any proceedings against any parties or officers, as for a contempt, for the purpose of enforcing any civil right or remedy.

The classification in section 7 embraces mostly those contempts which are offenses against the court as a tribunal of justice, tending to lessen its dignity, contemn its mandates, impair the respect due to its authority, or interrupt its proceedings.

The other class of contempts provided against in chapter 256 has an additional object, although the two classes in some of their provisions cover the same acts. This object is well expressed in the title to the chapter, namely:

"Of proceedings as for contempts to enforce civil remedies, and to protect the rights of parties in civil actions."

Section 1 of this chapter reads as follows:

"Every court of record shall have power to punish by fine and imprisonment, or either, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause or matter depending in such court, or triable therein, may be defeated, impaired, impeded, or prejudiced, in the following cases:

"1. All attorneys, counselors, solicitors, clerks, registers, sheriffs, coroners, and all other persons in any manner duly elected or appointed to perform any judicial or ministerial service, for any misbehavior in such office or trust, or for any willful neglect or violation of duty therein; for disobedience of any process of such court, or any lawful order thereof, or of any lawful order of a judge of such court, or any officer authorized to perform the duties of such judge.

"2. Parties to suits, for putting in fictitious bail or sureties, or for any deceit, or abuse of the process or proceedings of the court.

"3. Parties to suits, attorneys, counselors, solicitors, and all other persons, for the non-payment of any sum of money ordered by such court to be paid, in cases where, by law, executions cannot be awarded for the collection of such sum; and any other disobedience to any lawful order, decree, or process of such court.

"4. All persons, for assuming to be officers, attorneys, solicitors, or counselors of any court, and acting as such without authority; for rescuing any property or persons which shall be in the custody of any officer by virtue of process issued from such court; for unlawfully detaining any wit-

76 MICH.—24.

ness or party to a suit, while going to, remaining at, or returning from, the court where such suit shall be noticed for trial; and for any other unlawful interference with the process or proceedings in any action.

" 5. All persons summoned as witnesses, for refusing or neglecting to obey such summons, or to attend, or to be sworn, or answer as such witness.

" 6. Persons summoned as jurors in any court, for improperly conversing with any party to a suit to be tried at such court, or with any other person, in relation to the merits of such suit; for receiving communications from any such party, or from any other person, in relation to the merits of such suit, without immediately disclosing the same to the court.

" 7. All inferior magistrates, officers, and tribunals, for disobedience of any lawful order or process of a superior court, or for proceeding in any cause or matter contrary to law, after such cause or matter shall have been removed from their jurisdiction.

" 8. All other cases where attachments and proceedings as for contempts have been usually adopted and practiced in courts of record, to enforce the civil remedies of any party, or to protect the rights of any such party."

The misconduct which it is alleged Langdon was guilty of was an unlawful interference in a cause pending in the Wayne circuit court by attempting, through one Nicholson, to bribe a juror to bring about a disagreement of the jury. It is claimed by counsel for Mr. Langdon that this act is not covered by chapter 255, How. Stat., and he cannot be proceeded against as for a criminal contempt. This claim is not disputed by the counsel for the Wayne circuit court, who asserts that the proceedings are under and authorized by chapter 256, How. Stat.

The first question to dispose of, then, is whether the proceedings were begun and carried on under chapter 255, which provides for proceedings in cases as for criminal contempts. They do not, upon their face, appear to be proceedings under that chapter. The affidavits upon which the order for attachment was based do not allege or set forth any fact

showing that Langdon committed any act made punishable under that chapter. They do refer to the civil suit pending in court when the act alleged was claimed to have been committed, and upon these affidavits an order was made for an attachment to issue, and the writ states that the alleged contempt consists in unlawfully interfering with the proceedings of the court in a certain action therein mentioned,—

"By which the rights of said plaintiff in said cause were calculated to be defeated, impaired, impeded, or prejudiced, as appears by the affidavits of John Nicholson and George F. Robison, filed this day."

And the subsequent proceedings were such as are authorized, by chapter 256, to be taken, with the exception of the bond or recognizance, which should have run to the officer making the arrest instead of to the people of the State.

This brings us to the consideration of the third and fourth assignments of error, which may be considered together. It must be conceded that these proceedings were not instituted for the purpose of enforcing any civil remedy of the infant, James Hughes, in his suit against the Detroit, Grand Haven & Milwaukee Railway Company. The trial of that suit had been concluded, and resulted in a verdict in his favor. There was no disagreement of the jury, and the plaintiff's civil remedy can be enforced by execution. He has therefore no occasion to resort to the court for aid under chapter 256. No actual loss or injury has been produced to the party by the misconduct alleged, and he neither seeks nor needs indemnity.

But does it follow that the court has no jurisdiction to punish, as for a contempt of court, a person who has interfered while the suit is pending, and endeavored to bring about a disagreement of the jury by bribery? Can it be said that such conduct is not calculated to defeat, impair, impede, or prejudice the rights or remedy of the party? The jurisdiction of the court does not depend upon the fact that the misconduct did actually produce such result. If the purpose

was, by adaptation of the means to the end, to bring about a disagreement of the jury, such conduct was calculated to defeat or impair the rights and remedies of the party to the suit.

Two purposes are apparent in the statutory enactments of chapter 256,—one to enforce the civil rights and remedies of parties to an action pending in the court; and the other to protect the rights of parties in civil actions.   One purpose is particular, and the other general.   Each is for the benefit of suitors, but one is for the particular benefit of a suitor in enforcing his civil rights, and affording a particular remedy; the other is a general benefit to both parties to protect their rights in the action.   The one is a sword of execution; the other a shield for their protection.

The dominant idea of the statutory provisions is that the court may fine and imprison for the misconduct enumerated in the various subdivisions of section 1.   It starts with the grant of power to the court to punish by fine or imprisonment, or both, any neglect or violation of duty, or any misconduct, by which the rights or remedies of a party in a cause or matter depending in such court, or triable therein, *may*— not *shall*—be defeated, impaired, impeded, or prejudiced in any of the enumerated cases.   The authority is to punish by fine or imprisonment.   The misconduct may cause actual loss or damage, or it may not.

Take, as an illustration, subdivision 4, § 1.   Under that subdivision it is a misconduct which the court may punish, as for a contempt, for any person to assume to be an officer, an attorney, a solicitor, or a counselor, in any court, and act as such without authority.   These are clearly criminal contempts, and it will be seen by reference to subdivisions 2, 3, and 4 of section 7, chap. 255, that several cases of strictly criminal contempts have been incorporated in section 1, chap. 256.   In all these cases proceedings may be had and fines imposed under chapter 256, and they have nothing to do

with the collection of debts, or the enforcement of civil remedies, beyond the support and vindication of the general administration of the laws. *Spalding v. People,* 7 Hill, 303, affirmed in 4 How. 21.

Whether the fine is imposed under a chapter relating to punishing certain misconduct as for a criminal contempt, or as for a contempt under chapter 256, when paid, it goes into the library fund under the Constitution and laws of this State. The proceeding in either case is regarded as a criminal proceeding, and the fine imposed, as a punishment for a wrong done to the State, and goes to it, and not to the party to the suit pending in which the contempt was committed. *In re Rhodes,* 65 N. C. 518; *Morris v. Whitehead,* Id. 637; *Bromley v. People,* 7 Mich. 472; *Schwab v. Coots,* 44 Id. 463; How. Stat. § 7287; *Haines v. Haines,* 35 Mich. 146.

Indemnity to the party is secured by section 21, which provides:

"If an actual loss or injury has been produced to any party, by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him, and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case, the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party, to recover damages for such injury or loss."

In all other cases than those specified in section 21 the fine shall not exceed $250 over and above the costs and expenses of the proceedings.

If the defendant does not appear on the return day, the court may order the bond taken upon the arrest to be prosecuted. This order operates as an assignment of the bond to any aggrieved party, who may maintain an action thereon, and the measure of damages to be assessed in such action is the extent of the loss or injury sustained by the aggrieved party by reason of the misconduct for which the attachment was issued, and his costs and expenses of prosecuting the

attachment. Section 28. If there be no party aggrieved by the misconduct for which the attachment was issued, if the defendant fails to appear according to the condition of the bond taken on the arrest, the court shall order the same to be prosecuted by the Attorney General, or the prosecuting attorney for the county in which such bond was taken. Section 30.

These provisions show that proceedings as for a contempt may be prosecuted, although no party be aggrieved by the misconduct for which the attachment issued, and, like criminal contempts, may be instituted by the court upon its own motion, without the intervention of the party to the pending suit. When affidavits are filed showing that attempts have been made to bribe jurors or witnesses in a cause, we conceive it to be the province of the court to proceed to vindicate the administration of the law by attaching the person guilty of the misconduct, whether a party to the suit take action or not.

The assignments of error do not raise any question of irregularity in the proceedings, but solely the question of jurisdiction, and this is the only question we are called upon to decide.

We think the court had jurisdiction of the subject-matter and of the party, and consequently the writ of *certiorari* is quashed, and the record remanded to the circuit court for the county of Wayne.

The defendants in the writ will recover their costs of this Court.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred.

CAMPBELL, J., (*dissenting*). I do not think the statute covers the proceedings appealed from.