## PEOPLE v WHITE

OPINION OF THE COURT

1. CRIMINAL LAW—MULTIPLE CRIMES—SAME TRANSACTION—MULTIPLE PROSECUTIONS.

Prosecution for one statutorily-defined crime bars subsequent prosecution for another statutorily-defined crime where both crimes are committed during a single criminal transaction in an attempt to attain a single criminal objective.

2. CRIMINAL LAW—CONSTITUTIONAL LAW—MULTIPLE CRIMES—MULTIPLE PROSECUTIONS.

A procedural rule allocating jurisdiction to try criminal offenses between the several courts of the state must be subordinated to a defendant's constitutional right not to be put twice in jeopardy for the same offense; thus, when two or more jurisdictions may try a defendant for a criminal transaction, the first to obtain jurisdiction does so to the exclusion of the others.

3. CRIMINAL LAW—MULTIPLE CRIMES—MULTIPLE PROSECUTIONS.

A defendant convicted of kidnapping in Wayne County Circuit Court may not be subsequently tried for felonious assault and rape in Recorder's Court of Detroit where the kidnapping and assault were committed in one continuous sequence to achieve one objective, the rape, even where a procedural rule would give jurisdiction over the kidnapping charge to the county court and over the other two charges to the city court.

DISSENT BY HOLBROOK, J.

4. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY.

*The constitutional interdiction of double jeopardy, to be operable,*

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 7] 21 Am Jur 2d, Criminal Law §§ 8, 9, 183, 184, 188, 189.
[2] 16 Am Jur 2d, Constitutional Law § 332.
[4] 21 Am Jur 2d, Criminal Law § 189.
[6] 20 Am Jur 2d, Courts § 88.
  21 Am Jur 2d, Criminal Law §§ 378, 379.
[8] 21 Am Jur 2d, Criminal Law §§ 183, 188.
[9] 21 Am Jur 2d, Criminal Law § 183 *et seq.*
[10] 20 Am Jur 2d, Courts §§ 131, 132.

*requires that a person accused of a crime must be successively subjected to jeopardy and that in each instance the offense must be the same, i.e., the second prosecution must be for the identical act and crime both in law and in fact for which the first prosecution was instituted; in determining the identity of an offense, one act may constitute several offenses but unless one offense is a necessary element in and part of another offense, an acquittal or conviction of one offense is not a bar to the prosecution for the other offense (US Const, Am V; Const 1963, art 1, § 15).*

5. CRIMINAL LAW—DOUBLE JEOPARDY—KIDNAPPING—RAPE—ASSAULT.

*A defendant's conviction of kidnapping did not prevent his prosecution for rape of or felonious assault on the same victim on double jeopardy grounds because kidnapping is not identical in law or in fact with rape or felonious assault since proof of the elements of kidnapping does not prove the other two offenses.*

6. COURTS—JURISDICTION—CONSTITUTIONAL LAW—DOUBLE JEOPARDY.

*The jurisdiction of a court means the authority or power to hear and determine a case; it is not a rule of procedure and is not therefore subordinate to the constitutional interdiction of double jeopardy.*

7. CRIMINAL LAW — KIDNAPPING — FELONIOUS ASSAULT — RAPE — SEQUENTIAL CRIMES—SAME TRANSACTION.

*The Legislature having defined the separate crimes of kidnapping, felonious assault, and rape, it is improper to rule that none of these crimes can be a separate and independent transaction.*

8. CRIMINAL LAW—SEQUENTIAL CRIMES—SAME TRANSACTION.

*The same transaction test should not be applied to defendant's acts of kidnapping, feloniously assaulting, and raping the complainant where neither the prosecutor nor the trial courts found that the three crimes committed in sequence were part of the same transaction.*

9. CRIMINAL LAW—SEQUENTIAL CRIMES—SAME TRANSACTION—CONSOLIDATION OF CHARGES.

*Defendant's convictions of feloniously assaulting and raping the complainant should not be reversed on double jeopardy grounds even if the "same transaction" test could be properly adopted where defendant knew of all the charges against him before his first trial, for kidnapping the same victim, commenced and he had an opportunity to ask for their consolidation, but failed to*

*do so and should not be allowed to take advantage of his delay in objecting; the same transaction test is for a defendant's benefit and he should be required to exercise an option as to whether he wants the charges consolidated before the first trial commences.*

10. Criminal Law—Sequential Crimes—Same Transaction—Juris-
diction.

*The Recorder's Court of Detroit is the only court which could have jurisdiction of kidnapping, felonious assault, and rape charges against defendant, if the "same transaction" test is applied, where the felonious assault and rape occurred wholly in Detroit, thus precluding Wayne Circuit Court jurisdiction, and the kidnapping, because a part of it extended into the City of Detroit, although commenced outside Detroit, gave the Recorder's Court concurrent jurisdiction with the Wayne Circuit Court, and where the Recorder's Court proceedings and jurisdiction preceded the circuit court proceedings, which thus did not oust the Recorder's Court of its prior lawful jurisdiction.*

Appeal from Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted Division 1 January 5, 1972, at Detroit. (Docket No. 10125.) Decided June 26, 1972. Leave to appeal granted, 388 Mich 780.

George White was convicted of rape and felonious assault. Defendant appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Robert E. McCall,* for defendant on appeal.

Before: Levin, P. J., and Holbrook and Bronson, JJ.

Bronson, J. Defendant was convicted by a jury in the Detroit Recorder's Court of rape, MCLA

750.520; MSA 28.788 and felonious assault, MCLA 750.82; MSA 28.277. These convictions were based on an information filed on April 15, 1968. Defendant was sentenced to prison terms of 8 to 30 years on the rape conviction and 3 years and 9 months to 4 years on the felonious assault conviction. Defendant appeals of right.

Prior to this trial, defendant was convicted of kidnapping, MCLA 750.349; MSA 28.581, by a jury in the Wayne County Circuit Court. The kidnapping trial was based on the same facts which led to defendant's later trial and convictions for rape and felonious assault. He received a sentence of 5 to 15 years for his kidnapping conviction. Defendant did not appeal that conviction and its validity is not before this Court.[1]

The record reveals that defendant met the victim and two of her girlfriends at the Windsor Racetrack on the evening of February 15, 1968. After leaving the track, defendant accompanied the victim and her companions to a local nightclub and then to a party. Upon leaving this party, the victim and her friends drove home to Inkster, Michigan. Defendant followed them to one of the friend's homes. When the complaining witness exited her vehicle, defendant apprehended her and asked her to return to downtown Detroit with him. When she refused, defendant struck her with the butt of a gun and forced her into his car, which

---

[1] Defendant bases much of his argument on *People v Otis Adams,* 34 Mich App 546 (1971), which held that a significantly independent asportation is required to constitute forcible kidnapping under MCLA 750.349; MSA 28.851. Defendant argues there was no asportation of significant independence in this case to constitute kidnapping and there is no difference between what he was tried for at his first trial and what he was tried for at his second trial. *Adams* deals with the validity of a kidnapping charge. For purposes of this appeal we must assume that the defendant's kidnapping conviction was valid. We express no opinion as to whether there was a significantly independent asportation to justify the kidnapping conviction.

was occupied by two other males. During the return ride to Detroit, the victim was forced to engage in sexual intercourse with the defendant.

Following defendant's conviction for kidnapping on March 21, 1969, a scheduled trial for March 25, 1969, on the rape charge was adjourned to await his sentencing for kidnapping.

Subsequent to his sentencing for kidnapping, the prosecution proceeded to schedule a trial on the rape charge. Defendant's motion to quash the complaint and warrant were denied. This Court granted his motion for immediate consideration for leave to appeal that denial and denied an application for emergency leave to appeal. Following the instant convictions, defendant moved for a new trial. The motion was denied.

The question presented for review is whether multiple prosecutions for several crimes arising out of the same criminal transaction violates defendant's right not to be placed in jeopardy twice for the same offense in contravention of the Fifth Amendment to the United States Constitution.

The generally stated rule is that there is no double jeopardy unless the offenses are the same both in law and in fact. A second prosecution is barred only when the facts necessary to convict in the second prosecution would necessarily have convicted in the first. This is known as the same evidence test. The rule has been criticized generally by commentators as inconsistent with the objectives underlying the double jeopardy prohibition.[2]

---

[2] See, *e.g.,* Kirchheimer, *The Act, the Offense and Double Jeopardy,* 58 Yale L J 513 (1949); Comment, *Ashe v Swenson: Collateral Estoppel, Double Jeopardy, and Inconsistent Verdicts,* 71 Colum L Rev 321 (1971); Comment, *Double Jeopardy, Vandercomb to Chicos—Two Centuries of Judicial Failure in Search of a Standard,* 45 J Urban Law 405 (1967); Comment, *Twice in Jeopardy,* 75 Yale L J 262 (1965).

There are several purposes underlying the double jeopardy prohibition. First, guilt should be established by proving criminal elements to a single jury rather than by allowing a prosecutor to rely on the increased probability of conviction by repeated prosecution. Thus, the rule against reprosecution for the same offense after acquittal. Second, the prosecutor should not be able to go sentence shopping by bringing successive prosecutions for the same offense before different judges. Thus, prosecution after conviction is prohibited. Third, criminal trials should not be instruments of harassment and second trials are forbidden. Finally, a person should not be subject to multiple punishment for a single legislatively defined offense. Judges, therefore, may not impose multiple punishment for the same offense at a single trial. Comment, *Twice in Jeopardy,* 75 Yale L J 262, 266–267.

As can be seen, the various policies lead to different rules which cover different situations. The courts have applied the same evidence test to both retrial and multiple punishment situations without considering the evil each situation presents. Applying the test in this way ignores the growing sophistication of legislatures in defining criminal activity. The test emphasizes a prosecutor's skill in framing an information rather than the state's interest in vindicating itself against defendant for his antisocial conduct. By applying the limiting definition of same offense inherent in the same evidence test, courts have permitted prosecutors, who have almost unlimited discretion in initiating a prosecution, to circumvent the protection which the double jeopardy clause affords and make the criminal trial an instrument capable of harassment. An examination of defendant's

behavior in the instant case in indicative of the problem. It takes little imagination to think of a number of legislatively defined crimes which a prosecutor could have charged defendant with. As Mr. Justice Brennan has noted, in such situations the possibilities for abuse are frightening. *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (concurring opinion).

The United States Supreme Court has given some credence to the same evidence test by applying it in other situations.[3] *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). The Court has never used the test in a case involving successive prosecutions following an initial conviction.[4] The cases in which the test has been used all involved multiple count convictions at a single trial.[5] In the only cited case dealing with the problem presented by the instant case, the Court applied a transactional test.[6] In *In re*

---

[3] The Federal courts have followed the same evidence test. See, *e.g., United States v Buonomo,* 441 F2d 922 (CA 7, 1971); *Smith v Cox,* 435 F2d 453 (CA 4, 1970); *United States v Wilshire Oil Co of Texas,* 427 F2d 969 (CA 10, 1970). The rule has not been without its critics in the Federal system. See *United States v Kollerson,* 145 US App DC 338; 449 F2d 1000 (1971); *United States v Mirra,* 220 F Supp 361 (SD NY, 1963).

[4] In *Williams v Oklahoma,* 358 US 576; 79 S Ct 421; 3 L Ed 2d 516 (1959), and *Ciucii v Illinois,* 356 US 571; 78 S Ct 839; 2 L Ed 2d 983 (1958) the Supreme Court held that reprosecutions for several crimes arising out of the same criminal transaction did not violate a defendant's right to due process of law. In *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the Court held that the Fifth Amendment applied to the states through the Fourteenth Amendment. The Court has not decided this problem as a matter of Fifth Amendment law since *Benton* was decided.

[5] *Harris v United States,* 359 US 19; 79 S Ct 560; 3 L Ed 2d 597 (1959); *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932); *Ebeling v Morgan,* 237 US 625; 35 S Ct 710; 59 L Ed 1151 (1915). See *Abbate v United States,* 359 US 187; 79 S Ct 666; 3 L Ed 2d 729 (1959) (separate opinion, Brennan, J.); *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970) (concurring opinion, Brennan, J.).

[6] In the only recent case which posed this question to the Supreme Court as a matter of Fifth Amendment law, the Court vacated the

*Nielsen,* 131 US 176; 9 S Ct 672; 33 L Ed 118 (1889), the Court held that an initial conviction precluded prosecution for a second crime which required proof of different elements than were required in the first trial. The basis of the Court's opinion was that the government was attempting to punish the defendant twice for essentially the same illegal conduct.

The same transaction test has been used in several jurisdictions.[7] One form of the test has recently been adopted in Alaska. *Whitton v State,* 479 P2d 302 (Alas, 1970).[8] In a lengthy discussion of the problem, the Alaska Supreme Court recognized that the problem cannot be solved by easy application of a rigid mechanical formula.

Michigan has implicitly recognized the test in *People v Miccichi,* 264 Mich 581, 583–584 (1933). The Court there held that a prosecution for murder which results in acquittal does not bar subse-

second conviction based on the Justice Department's policy of avoiding separate trials involving multiple crimes arising in a single transaction. *Petite v United States,* 361 US 529; 80 S Ct 450; 4 L Ed 2d 490 (1960). The Justice Department concurred in this disposition of the case.

[7] See, *e.g., State v Richardson,* 460 SW2d 537 (Mo, 1970); *Walton v State,* 448 SW2d 690 (Tenn Crim App, 1969); *People ex rel Micieli v Webster,* 269 App Div 887; 56 NYS2d 155 (1945); *Burnam v State,* 2 Ga App 395; 58 SE 683 (1907); *State v Bell,* 205 NC 225; 171 SE 50 (1933). The test is not always applied consistently. Compare *Burnam v State, supra,* with *Harris v State,* 193 Ga 109; 17 SE2d 573 (1941). Compare *State v Cooper,* 13 NJL 361 (Sup Ct 1833) with *State v Hoag,* 35 NJ Super 555; 114 A2d 573 (1955), *aff'd,* 21 NJ 496; 122 A2d 628 (1956), *aff'd,* 356 US 464; 78 S Ct 829; 2 L Ed 2d 913 (1958).

Some states have reached the same result by statutes which forbid multiple trials and punishment for crimes arising during a single transaction. See, *e.g., State v Corning,* 289 Minn 383; 184 NW2d 603 (1971); *Smith v State,* 486 P2d 770 (Okla Crim App, 1971); *In re Henry,* 65 Cal 2d 330; 54 Cal Rptr 633; 420 P2d 97 (1966).

[8] The Alaska formulation focuses on the quality of differences, if any, between the separate statutory offenses, as such differences relate to the basic interests sought to be vindicated or protected by the statutes, 479 P2d 302, 312. For other variations of the test see, Kirchheimer, *supra,* note 2; Comment, 43 Notre Dame Lawyer 1017 (Symposium, 1968).

quent prosecution for the robbery in which the murder occurred where the two are not shown to be connected. The clear implication of the opinion is that where two statutorily-defined crimes are committed during the commission of a single criminal transaction and are inextricably intertwined, prosecution for one crime bars a subsequent prosecution for the other. Judge Levin has urged full recognition of this test by this Court. *People v Noth,* 33 Mich App 18 (1971) (dissent). The thrust of this formulation is the defendant's purpose in undertaking the criminal activity involved. Where a defendant has one objective and commits several crimes in preparing for and in attaining that objective, the prosecution may initiate only one prosecution.[9]

One advantage of this test is that it is consistent with double jeopardy's purpose of bringing finality to criminal proceedings. When double jeopardy operates it enables a defendant to consider the matter closed and saves the cost of redundant litigation. It also helps, to some extent, to equalize the adversary capabilities of grossly unequal litigants.

The same transaction test also goes a long way towards preventing harassment and sentence shopping. In doing so, it recognizes that the prohibition of double jeopardy is for the defendant's protection. It is not a device which allows the state, by using legal technicalities, to determine when it has received fair treatment at a trial or when the defendant has received a satisfactory sentence.

We believe harassment occurs whenever a prosecutor acts without legitimate justification. Sentence shopping is not a legitimate justification for

---

[9] See *Irby v United States,* 390 F2d 432, 435 (1967) (concurring opinion, Leventhal, J.).

reprosecution. In seeking to prohibit these prac-
tices, the double jeopardy clause puts an outside
limit on a prosecutor's discretion.

In Michigan, the Legislature defines what con-
duct is considered criminal and the length of
prison confinement which may be imposed for such
conduct. The judiciary determines the proper sen-
tence, within the legislatively-defined limits, for a
convicted defendant based on all relevant consider-
ations before it. MCLA 769.1; MSA 28.1072. In
imposing sentence, the judge normally has before
him not only the evidence presented at trial but
also the circumstances surrounding the crime in a
presentence report. Miller, *Prosecution: The Deci-
sion to Charge a Suspect With a Crime* (Little,
Brown & Co, 1969), pp 199–200 and fn 21. It is not
the prosecutor's function to become involved in the
sentencing procedures. To the extent that he does
become involved he should seek to assure that a
fair and informed judgment is made on the sen-
tence and to avoid unfair sentence disparities.
ABA Standards, The Prosecution Function and the
Defense Function § 6.1 (Approved Draft, 1971).
When the prosecutor is able to reprosecute a de-
fendant for a technically different crime, he is able
to do indirectly what he cannot do directly—chal-
lenge a judge's discretion in imposing sentence.

By adopting the same transaction test, we are
not depriving the state of its right to vindicate
itself for each crime an accused commits during
one criminal transaction. Liberal joinder rules
permit the state to vindicate its interest in one
trial when the crimes are committed in the same
local jurisdiction.[10] Even where, as here, the crimes

---

[10] One reason for the original formulation of the same evidence test
was the strictness of common law pleading and amendment proce-
dures. Strict application of the test allowed substance to govern over
form where the state's initial prosecution was barred by a technical

are committed in different jurisdictions within the state, the state is still able to vindicate its interests.

A procedural rule allocating jurisdiction to try offenses between the several courts of the state must be subordinated to a defendant's constitutional right not to be put twice in jeopardy for the same offense. *Cf. Gouled v United States,* 255 US 298, 313; 41 S Ct 261, 266; 65 L Ed 647, 654 (1921). This state's judicial power is, under our Constitution, vested in "one court of justice". Const 1963, art 6, § 1. While that power is divided among several courts, all the courts are parts of the same unified judicial system. When two or more such jurisdictions may try a defendant for a criminal transaction, the first to obtain jurisdiction does so to the exclusion of the others. *People v Hanrahan,* 75 Mich 611 (1889). Application of the same transaction test does not prohibit separate trials where a defendant is involved in several criminal transactions at different times.[11] By employing this test we allow substance to govern form and give meaning to a constitutional guarantee which cannot be ignored.

In the instant case, defendant committed three identifiable crimes in one continuous sequence to achieve one purpose—sexual intercourse with his

deficiency in the information which could not be cured by amending it. Liberal procedural rules have now cured these problems. Coupled with the burgeoning number of crimes which legislatures have created, the same evidence test, contrary to its original intent, now allows form to govern substance. See Judge LEVIN's dissent in *People v Noth,* 33 Mich App 18, 29–36 (1971).

[11] It also should be made clear that we do not decide what would happen where defendant, while perpetrating his criminal activity, attempts to accomplish objectives not within his original contemplation. We only decide that a defendant who commits several crimes while attempting to achieve a single criminal objective may be tried only once for crimes committed during that single transaction in the furtherance of that objective.

victim. The same witnesses and essentially the same evidence was heard at both trials. A review of that evidence indicates that the assault was necessary to achieve the kidnapping and the kidnapping was merely preparatory in achieving the ultimate goal—rape. None of these crimes can be defined as a separate and independent transaction. They were all the product of a single criminal intent. Under these circumstances the prosecutor acted in violation of defendant's right not to be put in double jeopardy when he sought a second prosecution because of his dissatisfaction with defendant's sentence on the kidnapping conviction. This conduct is contrary to the protection double jeopardy affords an individual. The complaint and warrant should have been quashed.

Reversed.

LEVIN, P. J., concurred.

HOLBROOK, J. *(dissenting).* This writer is unable to subscribe to the result obtained in the majority opinion.

The essential sordid facts indicate that the defendant met the complaining witness and two of her girlfriends at the Windsor Race Track during the evening of February 15, 1968. After a night of socializing, the complaining witness and her friends drove to one of the friend's homes in Inkster, Michigan. The defendant and two companions followed them. When the complaining witness exited her vehicle, the defendant stopped her and asked her to return to Detroit with him. She refused. The defendant then struck her with a gun and forced her into his vehicle. Thereafter, inside the corporate limits of the City of Detroit, the defendant forced the complaining witness to engage in sexual intercourse with him.

The defendant was arraigned in Detroit Recorder's Court on February 21, 1968, for the offense of rape. On February 28, 1968, he was arraigned in Inkster, Michigan, on the charge of kidnapping. On March 4, 1968, the preliminary examination on the rape charge was held in the Detroit Recorder's Court. The preliminary examination on the charge of kidnapping was held in Inkster on March 6, 1968. Defendant was bound over to the Recorder's Court on the charge of rape, MCLA 750.520; MSA 28.788, and felonious assault, MCLA 750.82; MSA 28.277, and the Wayne County Circuit Court on the charge of kidnapping, MCLA 750.349; MSA 28.581.

On March 21, 1969, the defendant was convicted by a jury in Wayne County Circuit Court of kidnapping. A scheduled trial for March 25, 1969, in the Detroit Recorder's Court on the charges of rape and felonious assault was adjourned. Thereafter, defendant was sentenced in the Wayne County Circuit Court to 5 to 15 years for kidnapping.

Subsequent to the sentencing for kidnapping, the prosecution proceeded to trial on the rape and felonious assault charges in the Detroit Recorder's Court. Defendant was convicted by a jury of both charges. He was sentenced to prison terms of 8 to 30 years on the rape conviction and 3 years and 9 months to 4 years on the felonious assault conviction.

On appeal, defendant contends that the Detroit Recorder's Court erred in denying defendant's motion to quash on the basis of double jeopardy. The majority opinion concurs, adopting the "same transaction" test for determining whether double jeopardy is applicable.

I

The Const 1963, art 1, § 15 states:

"No person shall be subject for the same offense to be twice put in jeopardy."

The Fifth Amendment of the United States Constitution makes the same provision but adds the words "of life or limb."

The double jeopardy provision of the Fifth Amendment of the United States Constitution applies to the states through the Fourteenth Amendment. *Benton v Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969); *People v McPherson,* 21 Mich App 385 (1970); *People v Sharp,* 9 Mich App 34 (1967). *Benton, supra,* is retroactive in its effect. *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970); *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

There are two elements of the constitutional interdict: (1) There must be successive subjection to "jeopardy" and (2) in each instance the offense must be the same. *People v Wilson,* 6 Mich App 474 (1967). The second prosecution must be for the identical act and crime both in law and fact for which the first prosecution was instituted. *People v Beverly,* 247 Mich 353 (1929). In determining the identity of the offense, one act may constitute several offenses. Unless the offense is a necessary element in and part of another, an acquittal or conviction of one is not a bar to prosecution for the other. *People v Wilson, supra.*

In the instant case, the crime of kidnapping is not identical in law or fact with the crimes of felonious assault or rape. The elements of kidnapping do not prove the crimes of felonious assault or rape. Thus, the defendant's conviction of kidnapping does not prevent the prosecution from prosecuting the defendant for the crimes of felonious assault or rape.

II

It is necessary to realize that the actions of the prosecutor in prosecuting the defendant and the actions of the trial courts involved in exercising their jurisdiction over the defendant are authorized by law. The crime of kidnapping occurred within Wayne County, but outside the corporate limits of the City of Detroit. Therefore, the Wayne County Circuit Court had jurisdiction over that offense. *People v Rosa,* 382 Mich 163 (1969); *People v Jackzo,* 206 Mich 183 (1919). The crimes of felonious assault and rape were committed within the corporate limits of the City of Detroit. As such, the Detroit Recorder's Court had exclusive jurisdiction over those offenses. MCLA 726.11; MSA 27.3561; *People v Rosa, supra.* Thus, the prosecutor acted properly in prosecuting the defendant in the respective trial courts and they properly exercised their jurisdiction.

However, the majority opinion asserts that these rules of jurisdiction are procedural rules that must be subordinated to a constitutional right not to be twice put in jeopardy for the same offense. *Cf Gouled v United States,* 255 US 298, 313; 41 S Ct 261, 266; 65 L Ed 647, 654 (1921). A reading of *Gouled* indicates that the rule involved therein was indeed merely a rule of procedure. However, in the instant case, the rule involved is one of jurisdiction. As far back as *Langdon v Wayne Circuit Judges,* 76 Mich 358 (1889), it has been held that jurisdiction, when applied to the courts, is the power to hear and determine a cause or matter. *Ward v Hunter Machinery Co,* 263 Mich 445 (1933), pointed out that jurisdiction lies at the foundation of all legal adjudications, and it means the authority which the court has to hear and determine a case. Again in *People v Joseph,* 384

Mich 24 (1970), the Supreme Court reiterated the
rule that jurisdiction deals with the service of
process and the power of the court to act in the
matter. Thus, it is clear that jurisdiction is not
merely a rule of procedure but rather, it is the
very power and authority necessary for the court
to act. *Gouled v United States, supra,* is therefore
distinguishable on the facts and not here control-
ling. The jurisdiction of the trial courts here in-
volved is therefore not subordinate to the alleged
constitutional right involved on the basis of
*Gouled v United States, supra.*

## III

The legislature has the constitutional right to
create any court and to vest it with whatever
jurisdiction it pleases, provided only that it shall
be inferior to the Supreme Court. *Detroit v Wayne
Circuit Judges,* 233 Mich 356 (1925). Only the
Supreme Court has the power to modify the provi-
sions of a legislative enactment in the exercise of
its power "by general rules [to] establish, modify,
amend, and simplify the practice and procedure in
all courts". Const 1963, art 6, § 5; *Pressley v
Wayne County Sheriff,* 30 Mich App 300 (1971).
Therefore, this Court is without power or author-
ity to modify the jurisdiction of the trial courts
here involved by adopting the "same transaction"
test.

## IV

There are two major shortcomings with the
adopted "same transaction" test of the majority
opinion. The first problem concerns the definition
of "transaction." "Any sequence of conduct can be
defined as an 'act' or a 'transaction.' An act or

transaction test itself determines nothing." Notes
and Comments, *Twice in Jeopardy,* 75 Yale L J
262, 276 (1965). For instance, the majority has
concluded that the three identifiable crimes occur-
red in one continuous sequence to achieve the one
purpose of sexual intercourse with the victim.
None of these crimes, they state, can be defined as
a separate and independent transaction. However,
at the same time that the majority so concludes,
the legislature has defined each of the acts in-
volved as a separate and independent crime. Thus,
it is clear that the majority opinion does not
indicate any guidelines by which to determine
what the "same transaction" would be.

The second problem involved concerns who is to
make the determination whether the crimes com-
mitted by the defendant are all a part of the
"same transaction" and what the standard of re-
view on the appellate level is to be. The majority
opinion indicates that the prosecutor and the trial
court are responsible for making the determina-
tion. Yet, the majority opinion did not review any
findings of the trial court or the prosecutor, and
they did not establish any standard of review of
any decisions made by the trial court or prosecu-
tor. In fact, the majority made their own findings
of fact after all the evidence was completed in
both trials, and then made their own conclusions
of law thereon. There is no authority cited
whereby this Court has the power or the authority
to hear criminal cases *de novo.*

## V

Even if the "same transaction" test could be
properly adopted, there still is no basis for revers-
ing the defendant's convictions under the facts of
the instant case. The defendant was arraigned in

the Detroit Recorder's Court on the charge of rape
on February 21, 1968. He was arraigned in Ink-
ster, Michigan, on February 28, 1968, on the
charge of kidnapping. On March 4, 1968, the pre-
liminary examination on the rape charge was held
in Detroit Recorder's Court and the preliminary
examination on the charge of kidnapping was held
in Inkster on March 6, 1968. On none of these
occasions did the defendant ask for consolidation
of the charges against him, although he definitely
knew of all the charges and he had an opportunity
to ask for such consolidation. There may be many
situations where a defendant may not desire con-
solidation of charges against him because of their
possible prejudicial effect. Because the "same
transaction" test is for the benefit of the defend-
ant, he should be required to exercise an option as
to whether he wants charges against him consoli-
dated before the first trial commences. Because the
defendant waited until after the first trial before
he raised the issue of double jeopardy and asserted
the new rule of law now adopted by the majority,
he should not be allowed to take advantage of his
delay in raising his objections.

VI

Assuming without determining that the "one
transaction" rule set forth in the majority opinion
should be applied to the facts in the instant ap-
peal, it is evident that the Recorder's Court for the
City of Detroit would be the only court that could
have jurisdiction of all three of the charged of-
fenses, *i.e.,* the rape and felonious assault crimes
were committed wholly in the City of Detroit, thus
precluding jurisdiction being in the Circuit Court
for Wayne County, *People v Rosa, supra.* Cer-
tainly, in applying any "single transaction" rule

requiring all charges to be contained in a single indictment or information, such rule should not in all fairness to the people of the State of Michigan permit a court that has jurisdiction of only one of the three committed offenses to preempt a legal proceeding in another court that has exclusive jurisdiction of two of the three charges and concurrent jurisdiction over the remaining charge, by reason of the fact that a part of the kidnapping extended into the City of Detroit. Further, the proceedings and consequent jurisdiction in the Recorder's Court preceded in time by several days the proceedings in the Wayne Circuit Court. The Recorder's Court in criminal cases has the same jurisdiction as a circuit court in like cases. *People v Rosa, supra;* MCLA 726.11; MSA 27.3561. The Detroit Recorder's Court obtained jurisdiction first. The subsequent Wayne Circuit Court criminal action did not oust the Recorder's Court of its prior lawful jurisdiction. *People v Hanrahan,* 75 Mich 611 (1889). Although the issue is not before us, if one of the two court actions must be set aside, that of the circuit court must be that one.

I vote to affirm the convictions in the Detroit Recorder's Court.